[Cite as *State v. Bailey*, 2012-Ohio-3274.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24861 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-CR-471 |
| v. | : | |
| | : | (Criminal Appeal from |
| ERIC BAILEY | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of July, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

ANTONY A. ABBOUD, Atty. Reg. #0078151, Gounaris, Denslow, Abboud Co., LPA, 130 West Second Street, Suite 1818, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Eric Bailey appeals from his conviction and

sentence for Domestic Violence, in violation of R.C. 2919.25(A), a misdemeanor of the first degree, and Disrupting Public Services, in violation of R.C. 2909.04(A)(1), a felony of the fourth degree. Bailey contends that both convictions are not supported by sufficient evidence, and are against the manifest weight of the evidence.

{¶ 2} We conclude that Bailey's conviction for Domestic Violence is supported by sufficient evidence, and is not against the manifest weight of the evidence. The testimony of an eyewitness, Bailey's brother Mark Miller, whom the trial court found "especially" credible, was that Bailey punched their mother, Mary Miller, in the back, or in the back of the head, with a closed fist, and tried, unsuccessfully, to take her down to the ground.

{¶ 3} Bailey's conviction for Disrupting Public Services is also supported by sufficient evidence, and is not against the manifest weight of the evidence. The testimony of both Mary Miller and Mark Miller was that Bailey took his mother's cell telephone, which was the only telephone in her house. Mark Miller, whom the trial court found especially credible, saw Bailey, outside the house, throw the cell telephone away, and it was never recovered. These facts make out a violation of R.C. 2909.04(A)(1). *State v. Thomas*, 2d Dist. Montgomery No. 19435, 2003-Ohio-5746, ¶ 62, followed.

{¶ 4} The judgment of the trial court is Affirmed.

## I. Eric Bailey's Altercation with his Mother, Mary Miller

{¶ 5} In January, 2011, Mary Miller was at home with Mark Miller, one of her twin, fourteen-year-old sons. An older son, Eric Bailey, age 32, arrived and kicked at the door. Bailey had not been to the home since early 2007, when he had lived there for a month

or two. Bailey had food with him that he wanted to heat in Mary Miller's microwave. He pushed past his mother, who told him that she was leaving soon, and he had to leave.

{¶ 6}   Bailey refused to leave, put his food in the microwave, heated it, and then took it into the dining room to eat. When he finished, his mother asked him to leave. He again refused. After several requests and refusals, Bailey told his mother, "You want me gone, you going to have to call the police."

{¶ 7}   Mary Miller pulled her cell telephone from her pocket and started to dial 911. She got as far as 9, when Bailey grabbed the phone, and the two began "tussling" over it. The cell phone was the only telephone in the house. Mark Miller testified as to what then happened, as follows:

A. Like, I saw him trying to throw her to the ground and get the phone out of her hand, and her trying to stay up.

Q. So when "he" – this, I'm assuming, and [sic] Eric [Bailey]; is that correct?

A. Yes.

Q. Trying to throw "her" – being your mom; is that correct?

A. Yes,

Q. To the ground, how was he trying to throw her to the ground?

A. Like, he was trying to toss her, like –

Q. How was he – was he holding her at all in any way?

A. Yes. He was behind her.

Q. Okay. And when he was behind her, do you know where his hands or arms were?

A.   He had the phone in his left hand –

Q.   Okay.

A.   – and the right hand was free? [question mark in original]

Q.   And so what was he doing with his right hand?

A.   He was – he was using his right hand to try to get leverage to throw her to the ground.

Q.   Did you see your mom going to the ground?

A.   No.

Q.   Okay.   What was going on as he was trying to throw her to the ground?

A.   She was – she was saying, "Let go of my phone," and he wasn't saying anything.

Q.   So what was your mom trying to do while Eric was trying to throw her to the ground?

A.   She was trying to get away from him with the phone.

Q.   What did you do?

A.   I was just sitting, looking at them at first.   And then I had seen him hit her, and that's when she had picked up the ax handle.   And then that's when I got up and took off my coat and then jumped into it.

* * *

Q.   Where did you see Eric hit your mom?

A.   He hit her – it was either to the back of the head or the back.

Q.   And could you tell from where you were how hard this hit was?

A.   No.

Q. Was it like a shove?

A. No.

Q. Can you approximate for me, if it wasn't like a shove, was it harder or softer than a shove?

A. It was harder than a shove.

Q. Was it like a punch?

A. Uh-huh.

Q. So it was like a punch. Do you remember if it was an open fist, closed fist?

A. It was a closed fist.

{¶ 8} Mary Miller had stumbled over an ax handle during her struggle with Bailey for the cell phone. She picked it up and, at some point, began swinging it at Bailey. She hit Mark Miller with the ax handle, but it did not "faze" him.

{¶ 9} When Mark Miller, a 280-pound center and defensive tackle, jumped into the fray, this resulted in all three upsetting the dining room table and winding up on the floor. Bailey and his mother continued to struggle with the cell phone, but Bailey ultimately obtained sole possession. Meanwhile, Mary Miller told Mark to go next door and telephone the police. Mark Miller initially resisted his mother's direction, worried that she might be hurt if he did not stay. But when she again insisted that Mark go next door, he left, went next door, and contacted the police. Mark Miller testified that from the time Bailey first grabbed the cell phone until the time Mark Miller left the house was from three to four minutes.

{¶ 10} Mary Miller's testimony did not contradict Mark's testimony in any essential detail, but she did not recall if she was hit in the back. She testified that she is always in a lot

of pain, and has learned not to pay any attention to the pain. She also testified that as the result of a 2007 head injury, she has problems with her memory. She did not testify that Bailey ever tried to throw her to the ground, but neither did she deny that he had tried to do so. Also, during the fray, Mary Miller's attention was focused on the cell phone, because it was the only record she had of phone numbers and appointments, and her memory was unreliable.

{¶ 11} Mark Miller testified that while he and Bailey were outside the house, he saw Bailey throw the cell phone away. It was never found.

## II. The Course of Proceedings

{¶ 12} Bailey was charged with Domestic Violence, in violation of R.C. 2919.25(A), with a specification that he had previously plead guilty to, or been convicted of, an offense involving a family or household member at the time of the violation, making the offense a fourth-degree felony. He was also charged with Disrupting Public Services, in violation of R.C. 2909.04(A)(1), a fourth-degree felony.

{¶ 13} Bailey waived a jury and was tried to the court. His mother, Mary Miller, and his brother, Mark Miller, testified on behalf of the State. Also testifying for the State was the investigating police detective. Bailey called no witnesses.

{¶ 14} The trial court found "the testimony of Mary Miller and Mark Miller to be credible, especially that of Mark Miller." The trial court found Bailey guilty of both Domestic Violence and Disrupting Public Services, but due to a perceived problem with the entry presented to prove the prior Domestic Violence conviction, found Bailey guilty of Domestic Violence without the prior offense specification, making that conviction a

first-degree misdemeanor.

{¶ 15}  The trial court sentenced Bailey to sixteen months for Disrupting Public Services, and to 180 days for Domestic Violence, with the sentences to be served concurrently, for an aggregate sentence of sixteen months.

{¶ 16}  From his conviction and sentence, Bailey appeals.

### III.  The Evidence Is Sufficient to Convict Bailey of Domestic Violence, and his Conviction for that Offense Is Not Against the Manifest Weight of the Evidence

{¶ 17}   Bailey's First and Second assignments of error are as follows:

THE VERDICT AGAINST MR. BAILEY, FINDING HIM GUILTY OF DOMESTIC VIOLENCE, WAS NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE.

THE VERDICT AGAINST MR. BAILY [sic], FINDING HIM GUILTY OF DOMESTIC VIOLENCE[,] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 18}   Bailey was charged with a violation of R.C. 2919.25(A), which provides that:  "No person shall knowingly cause or attempt to cause physical harm to a family or household member."  "Household member" is defined in R.C. 2919.25(F)(1)(a)(ii) as: "Any of the following who is residing or has resided with the offender: * * * ; (ii) A parent, * * * ."

{¶ 19}  Both Mary Miller and Mark Miller testified that Mary Miller is Bailey's mother.  Both also testified that Bailey had resided with his mother in the past.

{¶ 20}  Bailey seems to be arguing, in support of both of these assignments of error,

that his mother, the alleged victim, never testified that he hit her, or that he tried to take her to the ground. It is true that she did not testify, of her own knowledge, as to either of these facts. But she did testify that she has an unreliable memory, that her focus was on the cell phone, which she was desperate to retain, and that she is in so much pain regularly that she has learned to disregard it.

{¶ 21}   Mark Miller, who was aloof from the fray at the relevant points, testified that he saw Bailey punch their mother in the back, or in the back of the head, with a closed fist, and that he also saw Bailey try to take her to the ground in an effort to wrest the cell phone away from her. The trial court, as the finder of fact, found Mark Miller to be an "especially" credible witness. From our review of the transcript, we cannot fault the trial court for so finding. Although Mary Miller could not corroborate Mark Miller's testimony concerning these two acts, neither did she contradict his testimony in this regard; she either was unaware of being punched from behind, and of Bailey's attempt to take her to the ground, or she could not remember these facts.

{¶ 22}   In evaluating the credibility of witnesses, the finder of fact is entitled to substantial deference. *State v. Parrish*, 2d Dist. Montgomery No. 21206, 2006-Ohio-4161, ¶ 27. Upon this record, we cannot say that this is the rare case where the finder of fact lost its way, creating a manifest miscarriage of justice. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶ 23}   The trial court was permitted to find, from the evidence in the record, that Bailey punched his mother in the back, or in the back of her head, and that he attempted to take her down to the ground. " 'Physical harm to persons' means any injury, illness, or other

physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

**{¶ 24}** Bailey seems to argue that his purpose was not to harm his mother, but merely to obtain possession of her cell phone. But the requisite culpability for Domestic Violence is "knowingly." Regardless of Bailey's purpose, it is reasonable to infer that he was aware that by punching his mother in the back, or in the back of the head, and by attempting to take her forcefully to the ground, he would probably be causing her some injury, even if only a slight and fleeting injury. Thus, he could reasonably be found to be guilty of having knowingly attempted to cause her physical harm, which is all that is required to make out a violation of R.C. 2919.25(A).

**{¶ 25}** Bailey's conviction for Domestic Violence is not against the manifest weight of the evidence. Perforce, therefore, it is supported by sufficient evidence, since there is evidence in the record, in the form of Mark Miller's testimony, that, if believed, would persuade a reasonable mind of Bailey's guilt beyond reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶ 26}** Bailey's First and Second assignments of error are overruled.

**IV. Bailey's Conviction for Disrupting Public Services Is Supported by Sufficient Evidence, and Is Not Against the Manifest Weight of the Evidence**

**{¶ 27}** Bailey's Third and Fourth Assignments of Error are as follows:

THE VERDICT AGAINST MR. BAILEY, FINDING HIM GUILTY OF

DISRUPTING PUBLIC SERVICES[,] WAS NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE.

THE VERDICT AGAINST MR. BAILY [sic], FINDING HIM GULTY OF DISRUPTING PUBLIC SERVICES, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 28}   Both Mary Miller and Mark Miller testified that Mary Miller's "flip-top" cell phone was the only phone they had available at the house.   Mark Miller testified that after he left the house, he saw Bailey, by then also out of the house, throw Mary Miller's cell phone away.   It was never found.

{¶ 29}   There does not seem to be a serious weight-of-the-evidence issue with respect to Bailey's Disrupting Public Services conviction.   The trial court found both Mary Miller and Mark Miller to be credible witnesses, and there seems no reason to discredit their testimony concerning the cell phone.   The issue Bailey raises is whether his throwing his mother's cell phone away constitutes a violation of R.C. 2909.04(A)(1), which provides as follows:

No person, purposely by any means or knowingly by damaging or tampering with any property, shall do any of the following:

(1) Interrupt or impair television, radio, telephone, telegraph, or other mass communications service; police, fire, or other public service communications; radar, loran, radio, or other electronic aids to air or marine navigation or communications; or amateur or citizens band radio communications being used for public service or emergency communications;

* * *

**{¶ 30}** Bailey cites *State v. Bedford*, 9th Dist. Summit Nos. 25048 and 25066, 2010-Ohio-3577, for the proposition that merely taking a person's cell phone and throwing it away does not violate R.C. 2909.04(A)(1). The court of appeals in that case analyzed the issue by applying *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, 919 N.E.2d 190, which involved a prosecution for violating R.C. 2909.04(A)(3). That statute provides as follows:

> No person, purposely by any means or knowingly by damaging or tampering with any property, shall do any of the following:
>
> * * *
>
> (3) Substantially impair the ability of law enforcement officers, firefighters, rescue personnel, emergency medical services personnel, or emergency facility personnel to respond to an emergency or to protect and preserve any person or property from serious physical harm.

**{¶ 31}** Notwithstanding the differences between R.C. 2909.04(A)(1) and R.C. 2909.04(A)(3), the court of appeals in *State v. Bedford* applied *State v. Robinson*, and found its facts distinguishable. In *Robinson*, the defendant "smashed" the only cell phone available to the victim, disabling it, and eliminating the victim's only way of contacting the police through 911. *Robinson,* ¶ 8. In *Bedford*, the defendant took the victim's cordless phone and deprived her of the use of it for some time. But the victim had access to "at least one standard corded phone," so that her telephone service was not "interrupted or impaired in any significant way." *Bedford*, ¶ 11.

{¶ 32}   In the case before us, like *Robinson*, but unlike *Bedford*, Mary Miller, Bailey's victim, had no access to telephone services other than her cell phone, which Bailey threw away, and which was never found.

{¶ 33}   We have also analyzed a conviction under R.C. 2909.04(A)(1) by looking to see whether the victim was left with any telephone service.  In *State v. Thomas*, 2d Dist. Montgomery No. 19435, 2003-Ohio-5746, ¶ 62, we held that a defendant who had ripped a telephone from the victim's wall and left her apartment with the telephone in his possession had violated the statute.  The victim "was forced to contact the police from a pay phone," implying that she had no other telephone service in her apartment.  *Id*.

{¶ 34}   We find the case before us to be indistinguishable from *State v. Thomas*.  By taking Mary Miller's only telephone from her home and throwing it away so that it could not be found, Bailey deprived her of telephone service as effectively as the defendant in *State v. Thomas*.

{¶ 35}   We conclude that Bailey's conviction for Disrupting Public Services is supported by sufficient evidence, and is not against the manifest weight of the evidence. Bailey's Third and Fourth assignments of error are overruled.


## V.  Conclusion

{¶ 36}   All of Bailey's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Antony A. Abboud
Hon. Dennis J. Adkins

Case Name:     *State of Ohio v. Eric Bailey*
Case No:              Montgomery App. No. 24861
Panel:               Fain, Donovan, Hall
Author:              Mike Fain
Summary: