[Cite as *Middleburg Hts. v. Musa*, 2013-Ohio-366.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97914**

---

# CITY OF MIDDLEBURG HEIGHTS

PLAINTIFF-APPELLEE

vs.

# HAITHEM K. MUSA

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Berea Municipal Court
Case No. 11-CRB-00782

**BEFORE:**   Blackmon, J., Stewart, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:**   February 7, 2013

**ATTORNEY FOR APPELLANT**

Allen C. Hufford
22408 Lakeshore Blvd.
Euclid, Ohio 44123


**ATTORNEY FOR APPELLEE**

Peter H. Hull
Law Director
City of Middleburg Heights
15700 E. Bagley Road
Middleburg Heights, Ohio 44130

PATRICIA ANN BLACKMON, J.:

{¶1} Appellant Haithem K. Musa ("Musa") appeals, pro se, the decision of the Berea Municipal Court, which found him guilty of domestic violence, in violation of R.C. 2919.25(A), a misdemeanor of the first degree. Musa assigns the following errors for our review:

> **I. The trial court erred in finding sufficient evidence to warrant the conviction of the appellant.**
>
> **II. The trial court erred in finding the appellant guilty of domestic violence because it was against the manifest weight of the evidence.**

{¶2} Having reviewed the record and pertinent law, we affirm Musa's conviction. The apposite facts follow.

{¶3} On July 3, 2011, Middleburg Heights Police Department arrested and charged Musa with domestic violence. Two days later, Musa pleaded not guilty at his arraignment, executed a waiver of his right to a speedy trial, and was released on bond. On November 10, 2011, a bench trial commenced.

## Bench Trial

{¶4} At the trial, Musa's wife, Mahla, age 30, testified that she has been married to Musa since 2002 and they have a son. Mahla testified that Musa, who was more than 20 years her senior, had recently indicated that he wanted a younger wife, told her that she had to move out, and that he would help to pay the rent for an apartment.

{¶5} Mahla testified that in the evening of July 3, 2011, after the professional movers had transported her furniture to an apartment she recently rented, she returned to the marital home to gather some personal effects, when an argument erupted between her and Musa. Mahla claimed Musa began asking why she was taking various items such as the bedspread and the mirror, and became so upset that he punched a hole in the wall. Musa screamed at her, demanded the house key, and then grabbed her in an attempt to take it away.

{¶6} Mahla said that she ran to her son's room to call the police, but Musa ripped the phone out of the wall, dragged her from the room, and screamed: "Get out of my house, get out of my house." Mahla testified that Musa then dragged her all the way from their son's room to outside the house. Tr. 10. Thereafter, Mahla ran next door to a neighbor who called the police.

{¶7} Steven Leone, the Musas' next door neighbor, testified he was sitting in his family room watching television on the evening of July 3, 2011, when he heard a knock on his door. Leone said that when he opened the door he found Mahla crying and her son screaming hysterically. Leone's wife and daughters invited the Musas' son inside their home to calm him down, while Leone stood outside with Mahla.

{¶8} Leone testified that Mahla complained that Musa had thrown her out of the marital home and that he had grabbed her by the arm. Leone called the police. Leone said that Mahla showed him where Musa had grabbed her and that he could see a red mark on Mahla's arm that looked like a hand print.

{¶9} Officer Nicolas McCoy testified that he was dispatched to the Musas' home on July 3, 2011. Officer McCoy testified that on arrival, he found Mahla distraught and standing in front of Leone's home. Officer McCoy spoke with Mahla and then went in the house and spoke with Musa.

{¶10} Officer McCoy said that both parties indicated that they were struggling over the car keys and that they were both trying to call the police, which caused the phone to be ripped out of the wall. Musa had a bruise on his finger that he claimed resulted from hitting the wall. Officer McCoy charged Musa with domestic violence because he saw a red hand print on Mahla's arm. Officer McCoy said that later at the police station, Musa indicated that Mahla physically attacked him and he grabbed her arms to keep her away.

{¶11} Musa took the stand in his own defense. Musa testified that he and Mahla had not been getting along and had agreed to separate. Musa denied Mahla's assertion that he wanted a younger wife. Musa claimed that Mahla was very jealous and always thought he had another woman. Musa testified as follows about the event:

**Q. So she has a problem with jealousy?**

**A. Very much, very much so, I think so. She left with the moving company and a half hour later she came back and she was a different person. I think she just wanted to start something to make me do something to her. She started insulting my family, saying things about my family. My mom and my dad are eighty some years old. I got really mad. I got upset. I didn't want to do something. She was trying to make me do something, I thought to myself. So I hit the wall. Then it is time for you to leave, you know.**

**Q. (Inaudible.)**

**A.** No. I never had that interaction.

**Q.** And she indicated you two struggled over her car keys?

**A.** She had her car keys on the floor.

**Q.** Why were her car keys on the floor?

**A.** She took all the living room furniture, so there was nothing left, nothing left in the living room but some big boxes, a big TV. I bought it for the day care. And a computer for a friend of mine. So she laid down her keys on the floor. So I grabbed the keys from the floor and I tried to take the house keys. She came at me. She tried to take the keys from me. My finger, that's how I got the bruise. If the officer remembers the mark was on the inside, I said to the officer the mark was on the outside; I mean from hitting the wall. I was nervous. I didn't want my wife to go to jail. My wife, she had a before, like a heart attack. I'm not the type of person who puts his wife in jail or subject my son to that kind of thing. He asked me if my wife hit me to give me [a] bruise or something, that kind of thing. So I said, no, she never hit me. I said, we are fine, nothing happened. We just had an argument.

**Q.** Later on it was a different story?

**A.** When I got handcuffed and taken to jail, then I know she lied to the police. She said I did this and this and this. I don't know what she said. I was in shock. So I told him that's what happened. I never pushed the woman. I only grabbed her arm to keep her from attacking me. Tr. 52-54.

{¶12} The trial court found Musa guilty of domestic violence, ordered a presentence investigation report, and scheduled a sentencing hearing. On January 4, 2012, the trial court sentenced Musa to three days in jail, but allowed him to perform 30 hours of community service in lieu of jail, fined him $100 plus court costs, and imposed one year of community control sanctions. Musa now appeals.

## Sufficiency of Evidence

**{¶13}** In the first assigned error, Musa argues his conviction was not supported by sufficient evidence.

**{¶14}** A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the state has met its burden of production at trial. *State v. Givan*, 8th Dist. No. 94609, 2011-Ohio-100, citing *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Id.*

**{¶15}** The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶16}** In the instant case, the trial court found Musa guilty of domestic violence in violation of R.C. 2919.25(A) which states, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). "Physical harm to persons" means any injury, illness, or other physiological impairment, regardless of its gravity or duration. R.C. 2901.01(A)(3).

**{¶17}** The requisite culpability for domestic violence is "knowingly." Regardless of Musa's purpose, it is reasonable to infer that he was aware that by struggling with his

wife to get the car keys and dragging her from their son's room to the outside of the house, he would probably be causing her some injury, even if only a slight and fleeting injury. Both Officer McCoy and Leone testified to seeing a red hand print on Mahla's arm that reasonably indicated that Musa must have grabbed his wife with force causing harm. Regardless of whether Mahla was injured during a struggle for keys or being dragged out of the house, Musa knowingly caused her physical harm. Thus, Musa could reasonably be found to be guilty of having knowingly attempted to cause her physical harm, which is all that is required to make out a violation of R.C. 2919.25(A). *State v. Bailey*, 2d Dist. No. 24861, 2012-Ohio-3274.

**{¶18}** As such, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the charged crime proven beyond a reasonable doubt. Accordingly, we overrule the first assigned error.

<u>**Manifest Weight of the Evidence**</u>

**{¶19}** In the second assigned error, Musa argues his conviction was against the manifest weight of the evidence.

**{¶20}** In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court restated the standard of review for a criminal manifest weight challenge as follows:

> **The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541.**

**In** *Thompkins*, **the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively.** *Id*. **at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief.** *Id*. **at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence.** *Id*. **at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."** *Id*. **at 387, 678 N.E.2d 541, citing** *Tibbs v. Florida* **(1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.**

{¶21}   Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest

weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶22} In the instant case, at the close of evidence, the trial court stated in pertinent part as follows:

> **I will certainly take into account all the evidence and evaluate it piece by piece. I would say that the victim and the defendant would counter, would sort of take each other out of it. And then if I listen to the Officer and evaluate his testimony and listen to Mr. Leone and evaluate his testimony, I believe that the conclusion I have no reasonable doubt that the defendant is guilty and I find the defendant guilty.** Tr. 64.

{¶23} Nonetheless, despite two independent witnesses testifying to seeing the red hand print on Mahla's arm, Musa argues the trial court gave too much weight to their credibility.

{¶24} However, while a reviewing court considers the credibility of the witnesses in a weight of the evidence review, "that review must nevertheless be tempered by the principle that weight and credibility are primarily for the trier of fact," in this case the trial court, because it is in "the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Kash*, 1st Dist. No. CA2002-10-247, 2002-Ohio-415, ¶ 25, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶25} Consequently, after reviewing the entire record, we conclude that this is not the exceptional case in which the evidence weighs heavily against the conviction. Accordingly, we overrule the second assigned error.

{¶26} Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

PATRICIA ANN BLACKMON, JUDGE

MELODY J. STEWART, A.J., and
LARRY A. JONES, SR., J., CONCUR