[Cite as *State v. Miller*, 2013-Ohio-3194.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO. 13-12-52

      v.

ANDREW P. MILLER,               O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Fostoria Municipal Court
Trial Court No. CRB 1200421

**Judgment Affirmed**

Date of Decision: July 22, 2013

APPEARANCES:

    *Kurt A. Dauterman* for Appellant

    *Timothy J. Hoover* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Andrew Miller, appeals the Fostoria Municipal Court's judgment finding him guilty of domestic violence. On appeal, Miller contends that the trial court erred by: (1) admitting inadmissible hearsay testimony; (2) denying his motion for acquittal; and, (3) considering the allegations contained in the complaint when determining his guilt. Miller also contends that the verdict was against the manifest weight of the evidence. Based on the following, we affirm the trial court's judgment.

{¶2} In October 2012, Miller was charged via complaint with one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. According to the complaint, on or about October 15, 2012, Miller allegedly threw two full soup cans at his live-in girlfriend, Amber Bowers, threw her over an upstairs railing, and threatened to kill her.

{¶3} In November 2012, the matter proceeded to a bench trial, during which the following relevant evidence was adduced.

{¶4} Bowers was the first witness called to the stand. Bowers testified that she and Miller have been in a relationship for nine years and reside together at Miller's residence in Fostoria, Ohio.

{¶5} With respect to the events giving rise to the complaint, Bowers testified that she and Miller spent the night of October 14, 2012, out with several

friends at a local bar. Before returning to their residence, Bowers and Miller visited their next-door neighbor, Angela Bernal, at her residence. After visiting Bernal, Bowers and Miller returned to Miller's residence.

**{¶6}** Bowers proceeded to offer the following testimony regarding the events that occurred after she and Miller returned to Miller's residence.

> A: Uhm, we entered the house. And from what I remember he was a little - - got a little angry and he went to grab me so I ran away and I ran up the stairs. Trial Tr., p. 9.

After Bowers ran upstairs she testified that "[Miller] threw stuff after [she] left the room." *Id*. at p. 13. According to Bower's testimony, she was not immediately aware of what Miller had thrown after she ran upstairs. Instead, as the following testimony reveals, Bower's did not determine what Miller had thrown until the police arrived on scene.

> Q: Did you see any soup cans on the floor near the area where you were afterwards?
>
> A: After the officers had arrived, yes.
>
> Q: Okay. Could you describe those soup cans?
>
> A: They were Campbell's Chunky soup that I had bought at the store. They were on the counter from when we had gotten home that evening.
>
> Q: And how many cans were there?
>
> A: There was [sic] two.
>
> Q: Were they banged up?

A: Yes.

Q: Do you know whether they - - Did they hit you?

A: No.

Q: What did they hit, if anything?

A: One hit the wall and one hit the stairs. *Id.* at p. 14.

After Miller had thrown the soup cans, Bowers testified that the following events occurred:

A: * * * He came after me. I - - I hid under the bed.

* * *

Q: * * * All right [sic]. How did that end being under the bed?

A: Uhm, he grabbed me by my feet.

* * *

Q: * * * [D]o you recall telling the police what he was threatening you with?

A: Yes.

Q: What?

A: He said he was gonna kill me.

Q: All right [sic]. So he entered the room and you said he dragged you out by your feet?

A: Yes.

Q: All right. Then, what happened * * *[?]

A:  I got away from him and ran down, went to go run down the stairs.

Q:  Did you succeed in making it all the way down the steps?

A:  Yes.

Q:  How did you - - what happened?

A:  Uhm, he - - he ran - - he ran after me.

Q:  Okay.  Now, this is on the way down he ran after you.  Did he grab you?

A:  Yes.

Q:  All right [sic].  Where did he grab you?

A:  He helped me fall down the steps.

Q:  He helped you fall down the steps?

A:  I went down the steps.

Q:  All right [sic].  Can you please tell me where he laid his hands on you?

A:  My arms.

Q:  Where specifically on your arms?

A:  Here.  Right here.

[Prosecutor]:  Can the record reflect she's pointing to her upper arm?

The Court:  The record will so reflect.

Q:  Okay.  Then, when you went down the stairs, did you fall or did you walk or how did you get all the way down the stairs?

A: I just remember falling down the stairs and getting up and running out, trying to run out of the house. *Id*. at p. 10-13.

After reaching the bottom of the stairs, Bowers explained that she attempted to flee the residence. Bowers offered the following testimony concerning her escape:

A: * * * On the way out the door I grabbed keys and he was pulling the keys out of my hands and shutting the door.

Q: Okay. Where were you when he was trying to pull these keys out of your hands?

A: * * * [T]rying to exit the door.

Q: So you were, what, part way in - -

A: Part way in - -

Q: - - part way out?

A: - - yes.

* * *

Q: Now, I understand you told the officer that he hit you with the door. Is that true?

A: Yes.

Q: How many times?

A: Quite a few.

Q: Where were you struck?

* * *

A: My back. *Id*. at p. 15-17.

After Bowers fled Miller's residence, she ran to Bernal's residence where she remained until the police arrived. As a result of her altercation with Miller, Bowers testified that she suffered bruising to both of her arms, one of her legs, and her back.

{¶7} On cross-examination, Bowers testified that she was inebriated on the night in question, and that her recollection of the night was not clear. Bowers acknowledged that she has a history of falling down when she is inebriated, and has suffered bruising as a result. Bowers, however, maintained that she does not have a history of causing self-inflicted injuries to her person when she is inebriated.

{¶8} Also on cross-examination, Bowers offered additional testimony concerning the events that gave rise to the complaint. First, Bowers indicated that the altercation began when Miller accused her of being intimate with a mutual friend, Tracy Rochester. Next, Bowers testified that she did not observe Miller throw the soup cans. Instead, Bowers indicated that she "could just hear stuff being thrown as [she] was running up the stairs." Trial Tr., p. 23. With respect to falling down the stairs, Bowers acknowledged that it was possible that she fell due to her inebriation. Bowers also acknowledged that it was possible that Miller grabbed her at the top of the stairs in an attempt to arrest her fall. Bowers further testified that she did not think that Miller would intentionally push her down the

stairs. Finally, with respect to being struck by the door, Bowers acknowledged that she had mistakenly taken Miller's keys when she attempted to exit the residence, and that Miller stopped her at the door in an attempt to retrieve his keys. Also, Bowers testified that she did not believe that Miller intended to hurt her when he struck her with the door.

{¶9} On redirect examination, the State revisited the point of the altercation where Miller threw two soup cans, resulting in the following exchange:

Q: * * * Now, you said you didn't see him throw [the soup cans] at you but you were on your way up the steps at the time, correct?

A: I could just hear things being thrown.

Q: Okay. You could hear things being thrown. All right [sic]. So did you - - Could you tell where these things that were being thrown were hitting?

A: I - -

Q: Well, was it near you?

* * *

A: I guess the second - - when I was going up the stairs and the one hit the stair. Trial Tr., p. 31.

{¶10} Next, the State called Bernal to the stand. Bernal testified that she has known Bowers and Miller for approximately 10 years. According to Bernal, Bowers, Miller, and Rochester had all visited her residence on the night in question. Approximately an hour after Bowers and Miller left Bernal's residence,

Bowers appeared alone at Bernal's front door. Bernal testified that Bowers was upset and crying. Bernal invited Bowers into her residence, where Bowers proceeded to detail what happened to her after she and Miller arrived home. Bernal testified that she observed what appeared to be fresh bruises on both of Bowers' arms and one of her knees.

{¶11} Finally, the State called Officer Frankart to the stand to discuss his investigation. Officer Frankart testified that he initially responded to Bernal's residence, where Bowers was located. Upon meeting Bowers, Officer Frankart observed that Bowers was upset and had recently been crying. Officer Frankart also observed bruising on Bowers' arms and one of her legs. Officer Frankart took several pictures of Bowers' bruises, which were subsequently introduced at trial. Based on his experience in responding to incidents of domestic violence, Officer Frankart testified that the bruises appeared to be recent. Officer Frankart also testified that Bowers admitted that she imbibed alcohol, but did not appear to be "highly intoxicated." Trial Tr., p. 61.

{¶12} After meeting with Bowers, Officer Frankart, along with two other officers, proceeded to enter Miller's residence. There, they found Miller asleep in an upstairs bedroom and arrested him on a charge of domestic violence. After Miller was taken to jail, Officer Frankart conducted an investigation of the residence and took photographs of the scene, which were subsequently introduced

at trial.[1]  During his investigation, Officer Frankart observed two soup cans lying on the ground.  The first soup can was located in the dining room.  Officer Frankart testified that the soup can was dented, the top was cracked open, and the wall nearest to the can was both damaged and covered with what appeared to be soup.  The second soup can was located near the stairs.  Like the first soup can, Officer Frankart testified that the second soup can was dented and the top was cracked opened.  Officer Frankart also testified that the railing leading up the stairs was damaged, and a banister was missing where the railing had been damaged.

{¶13} On cross-examination, Officer Frankart testified that he did not observe any soup on Bowers.

{¶14} After Officer Frankart's testimony, the State's exhibits were admitted into evidence and the State rested its case.  Miller moved for acquittal pursuant to Crim.R. 29, but the trial court denied his motion.

{¶15} Miller then presented his defense.  Miller recalled Bowers to the stand and revisited Bowers' fall down the stairs.  Bowers testified that she remembered being grabbed, but could not remember whether she was pushed down the stairs.

---

[1] Though no objection was raised to Officer Frankart's entrance and subsequent investigation of Miller's residence, we note, as a matter of course, that there was evidence that Bowers, who, as previously mentioned, resided with Miller, gave Officer Frankart permission to both enter and conduct an investigation of the residence.

{¶16} Finally, Miller testified on his own behalf. Miller acknowledged that both he and Bowers were inebriated when they returned home from Bernal's residence, and were arguing about Rochester. As a result of their argument, Miller repeatedly asked Bowers to leave their residence. Bowers, however, did not comply, and, instead, ran upstairs. At this point in the argument, Miller testified that he threw two soup cans. Miller, however, maintained that he did not throw the cans at Bowers. After throwing the soup cans, Miller followed Bowers upstairs, where he found her hiding underneath a bed. Miller testified that he pulled her out from under the bed and again asked her to leave. Thereafter, Miller offered the following explanation about what occurred on the stairs.

> A: Uhm, we were kind of shoving into each other at the top of the stairs. And then she started running down the stairs and kind of fumbled around and I went to grab for her.
>
> Q: Okay. And were you successful in stopping her from falling?
>
> A: No. I mean, I got a hold of her but she, her weight was already going forward. Trial Tr., p. 84.

Miller further testified that after Bowers reached the bottom of the stairs she grabbed his keys and attempted to leave the residence. Miller explained that he attempted to retrieve his keys from Bowers, resulting in the following exchange:

> A: * * * I thought she had my set of keys[.] * * * I just wanted my keys, so I kept trying to grab them out of her hand.
>
> Once I got [the] keys I was just like, "just go. Just get out" and I kept trying to shove the door but her leg - - her leg was in there. She

-11-

was kind of like standing there wanting to argue, and her leg was still in the door. I was just like, "just go. Just get out." I kept shoving the door.

Q: Were you slamming the door into her?

A: A little bit. I mean, like just wanting her to get out of there. *Id*. at p. 85-6.

**{¶17}** On cross-examination, Miller acknowledged that he may have threatened to kill Bowers if she did not leave his residence. Miller, however, maintained that any such threat was made in the "heat of the moment," and that he had no intention of killing Bowers. *Id*. at p. 87.

**{¶18}** At the close of all the evidence, the trial court found Miller guilty of domestic violence. Immediately thereafter, the trial court proceeded to sentence Miller to 90 days in jail, with 80 days suspended. The trial court further ordered Miller to be placed on two years' probation, pay a $250.00 fine, and complete domestic violence counseling.

**{¶19}** Miller filed this timely appeal, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE COURT FAILED TO GRANT DEFENDANT'S CRIM.R. 29 MOTION TO ACQUITTAL CITING THE FAILURE OF THE STATE TO SATISFY THE BURDEN OF PROOF AT THE CONCLUSION OF THE STATE'S PRESENTATION OF EVIDENCE.**

*Assignment of Error No. II*

**APPELLANT'S DOMESTIC VIOLENCE CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. III*

**THE TRIAL COURT FAILED TO SUSTAIN DEFENDANT'S OBJECTION PERTAINING TO THE OFFICER'S TESTIMONY CONCERNING THE CONTENTS OF AMBER BOWER'S OUT OF COURT [sic] STATEMENTS WHICH CONSTITUTED HEARSAY AND OR [sic] LEADING QUESTIONS.**

*Assignment of Error No. IV*

**THE JUDGE IMPROPERLY SUBSTITUTED THE ORIGINAL COMPLAINT VERSION OF EVENTS INSTEAD OF TRIAL TESTIMONY WITH THE PHYSICAL EVIDENCE TO SUPPORT FINDING APPELLANT GUILTY RATHER THAN FIND ANY BENEFIT OF DOUBT IN FAVOR OF THE ACCUSED.**

**{¶20}** Due to the nature of Miller's assignments of error, we elect to address them out of order.

*Assignment of Error No. III*

**{¶21}** In his third assignment of error, Miller contends that the trial court erred when it admitted Officer Frankart's testimony concerning Bowers' out-of-court statements. Specifically, Miller contends that the admission of such

testimony was erroneous because it constituted inadmissible hearsay.[2]  We

disagree.

**{¶22}** Miller's contention is centered on the following exchange:

Q:  Officer Frankart, from the way the position of these marks are on the alleged victim's arms, and from your training and experience and observations of such marks and things in the past, did you see any reason to believe that those came from anything other than what Ms. Bowers told you?

A:  No

[Defense Counsel]:  Objection.  Calls for hearsay.

The Court:  Overruled.  You can answer the question.

[A]:  No.  Trial Tr., p. 59-60.

**{¶23}** An appellate court reviews the trial court's decision on the admission

of evidence for an abuse of discretion.  *State v. Heft*, 3d Dist. No. 8-09-08, 2009-

Ohio-5908, ¶ 62, citing *State v. Issai*, 93 Ohio St.3d 49, 64 (2001).  A trial court

will be found to have abused its discretion when its decision is contrary to law,

unreasonable, not supported by the evidence, or grossly unsound.  *See State v.*

*Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶ 16-18, citing *Black's Law Dictionary*

11 (8 Ed.Rev.2004).  When applying the abuse of discretion standard, a reviewing

---

[2] Though Miller's assignment of error also challenges the admission of Officer Frankart's testimony on the basis that it was elicited via a leading question, we note that Miller did not argue the same in support of his assignment of error.  Instead, he first argues that the testimony was elicited via a leading question in his reply brief.  Reply briefs are merely intended to be an opportunity to reply to the appellee's brief, not to raise new issues.  *E.g.*, *State ex rel. Am. Subcontractors Assn., Inc. v. Ohio State Univ.*, 129 Ohio St.3d 111, 2011-Ohio-2881, ¶ 40 (new argument in reply brief is forbidden).  Accordingly, we find that Miller has waived the matter on appeal.

court may not simply substitute its judgment for that of the trial court. *State v. McClellan,* 3d Dist. No. 1-09-21, 2010-Ohio-314, ¶ 49.

{¶24} Hearsay is "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Evid.R. 802 generally prohibits the admission of hearsay unless the hearsay statement is covered by a specific exception.

{¶25} Contrary to Miller's assertion, Officer Frankart's above testimony is not hearsay. The question asked of Miller does not seek testimony concerning Bowers' out-of-court statements, nor does Officer Frankart offer an out-of-court statement in response to the State's question. Rather, the State's question sought opinion testimony. Specifically, the question sought Officer Frankart's opinion as to whether the injuries he observed on Bowers could have been caused from something other than being grabbed, falling down stairs, and repeatedly struck with a door. Consequently, the trial court did not abuse its discretion when it admitted Officer Frankart's testimony over Miller's objection.

{¶26} Accordingly, we overrule Miller's third assignment of error.

*Assignment of Error No. I*

{¶27} In his first assignment of error, Miller contends that the trial court

erred when it overruled his motion for acquittal.[3] Specifically, Miller argues that there was insufficient evidence to establish that he (1) acted knowingly, and (2) caused physical harm to Bowers. We disagree.

*Standard of Review*

{¶28} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47. Sufficiency is a test of adequacy, *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, the question of whether evidence is sufficient to sustain a verdict is one of law. *State v. Wingate*, 9th Dist. No. 26443m 2013-Ohio-2079, ¶ 4.

*R.C. 2919.25*

{¶29} Miller was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to

---

[3] Miller's Crim.R. 29 motion for acquittal had no application in his bench trial. *State v. Fisher*, 3d Dist. No. 2-10-09, 2010-Ohio-5192, fn. 2; *State v. Massie*, 5th Dist. No. 05CA000027, 2006-Ohio-1515, ¶ 23. "The purpose of a motion for judgment of acquittal is to test the sufficiency of the evidence and, where the evidence is insufficient, to take the case from the jury. In the non-jury trial, however, the defendant's plea of not guilty serves as a motion for judgment of acquittal, and obviates the necessity of renewing a Crim.R. 29 motion at the close of all the evidence." *City of Dayton v. Rogers*, 60 Ohio St.2d 162, 163 (1979), *overruled on other grounds*, *State v. Lazzaro*, 76 Ohio St.3d 261, 266 (1996). Though Miller's motion for acquittal had no application in his trial, we will treat his assignment of error as challenging the sufficiency of the evidence. *See State v. Tatum*, 3d Dist. No. 13-10-18, 2011-Ohio-3005, ¶ 43 (motion for acquittal tests the sufficiency of the evidence), citing *State v. Miley*, 114 Ohio App.3d 738, 742 (4th Dist. 1996).

cause physical harm to a family or household member." Accordingly, in order to find Miller guilty of domestic violence in violation of R.C. 2919.25(A), the State must prove that he (1) knowingly caused or attempted to cause, (2) physical harm, (3) to a family or household member. Notably, Miller does not challenge Bowers' status as a family or household member. Therefore, our inquiry will focus on the first two elements.

*Knowingly*

{¶30} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "'Knowingly' does not require the offender to have the specific intent to cause a certain result. That is the definition of 'purposely.' Instead, whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff*, 145 Ohio App.3d 555, 563 (1st Dist. 2001), citing *State v. Adams*, 4th Dist. No. 94CA2041 (June 8, 1995).

*Attempt*

{¶31} Ohio's general attempt statute provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the

commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A). "A 'criminal attempt' is when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." *State v. Woods*, 48 Ohio St.2d 127 (1976), paragraph one of the syllabus, *overruled in part on other grounds*, *State v. Downs*, 51 Ohio St.2d 47 (1977). In defining a substantial step, the *Woods* Court indicated that the act need not be the last proximate act prior to the commission of the offense. *Id*. at 131-32. However, the act "must be strongly corroborative of the actor's criminal purpose." *Id*. at paragraph one of the syllabus. "Precisely what conduct will be held to be a substantial step must be determined by evaluating the facts and circumstances of each particular case." *State v. Butler*, 5th Dist. No. 2012-CA-7, 2012-Ohio-5030, ¶ 28, citing *State v. Group*, 98 Ohio St.3d 248, 262, 2002-Ohio-7247, ¶ 100 (2002).

*Physical Harm*

{¶32} "Physical harm" or "physical harm to persons" is defined as, "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶33} Bearing these principles in mind we turn our attention to the evidence presented by the State.

{¶34} Though the altercation began as a verbal dispute, Bowers' testimony reveals that it quickly devolved into threats, acts, and attempted acts of physical violence. Notably, Bowers testified that Miller threatened to kill her. In addition to Miller's verbal threats, Bowers also described three incidents during the altercation, which, if proven, would constitute domestic violence pursuant to R.C. 2919.25(A). First, Bowers' testified that Miller threw two full soup cans during the altercation. While it is undisputed that the neither of the soup cans hit Bowers, the evidence indicates that at least one of the cans was thrown in Bowers' general direction. Specifically, Bowers' testimony reveals that while she did not see Miller throw the soup cans, she did hear one of the cans hit the stairs as she was ascending the same. Further, Officer Frankart's testimony, as well as photographs taken on the night the altercation occurred, corroborated Bowers' testimony that one of the soup cans struck the stairway railing.

{¶35} Second, Bowers testified that Miller grabbed her by the arm and "helped [her] fall down the [stairs]." Trial Tr., p. 12. In addition to Bowers' testimony, Officer Frankart testified that he observed fresh bruising to Bowers' arms when he arrived on scene, and took photographs of the same. Indeed, these photographs, which were admitted into evidence as State's Exhibits D-1 and D-2, depict bruising to Bowers' arms.

{¶36} Finally, Bowers testified that Miller repeatedly struck her with a door when she attempted to flee the residence. In addition to Bowers' testimony, Officer Frankart testified that he observed fresh bruising to Bowers' arms and one of her legs, and took photographs of the same. Indeed, review of these pictures, which were admitted into evidence as State's Exhibits C-1, C-2, D-1, and D-2, depict bruising to Bowers' arms and one of her legs.

{¶37} Construing this evidence in a light most favorable to the State, we find that there was sufficient evidence for the trier of fact to find, beyond a reasonable doubt, that the State proved the essential elements of domestic violence. Regardless of Miller's purpose, it is reasonable to infer given the evidence of Miller's threat to kill Bowers as well as the nature of his actions towards her during the altercation – throwing a full soup can at Bowers, grabbing her by the arms, and repeatedly striking her with a door – that he acted knowingly. *See City of Middleburg Hts. v. Musa*, 8th Dist. No. 97941, 2013-Ohio-366 (finding that the State presented sufficient evidence that the defendant acted knowingly, because it was reasonable to infer that the defendant was aware that he would probably cause his wife some injury by struggling with her for the car keys and dragging her from their son's room to the outside of the residence). Further, there was sufficient evidence to establish that Miller both attempted to cause (i.e., throwing a full soup cans at Bowers) and caused (i.e., bruising to Bowers arms

where he purportedly grabbed her) physical injury to Bowers during the altercation.

**{¶38}** Accordingly, we overrule Miller's first assignment of error.

*Assignment of Error No. II*

**{¶39}** In his second assignment of error, Miller contends that the finding of guilt was against the manifest weight of the evidence. We disagree.

**{¶40}** When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. *State v. Martin,* 20 Ohio App.3d 192 (1ˢᵗ Dist. 1989), paragraph three of the syllabus.

**{¶41}** Initially, we must address Miller's reliance on Bowers' testimony concerning her belief that Miller did not intend to hurt her during the altercation. Miller seizes upon this testimony arguing that it demonstrates that he did not act with the requisite mental state. Intent, however, is not the culpable mental state for domestic violence. Instead, and as detailed above, the culpable mental state is

knowingly. R.C. 2919.25(A). Thus, Bowers' testimony concerning Miller's intent bears no significance in determining whether he acted knowingly. *See Huff*, 145 Ohio App.3d at 563 (witnesses' testimony that he did not believe defendant intended to hit anyone did not prove that defendant lacked the necessary "knowing" mental state for felonious assault). Bearing this in mind, we turn our attention to the pertinent evidence offered at trial.

{¶42} As previously mentioned, Bowers' testimony recounted three distinct incidents that formed the basis for the charge of domestic violence. First, Bowers testified that Miller threw two full soup cans during the altercation. Indeed, Miller acknowledged that he threw two soup cans during the altercation, but insisted that he did not throw them at Bowers. Though Bowers acknowledged that she did not witness Miller throw the cans, she testified that she heard the second can hit the stairs as she ascended the same. Officer Frankart's description of the damage to the railing where the soup can hit as well as the photographs he took during his investigation, corroborate the fact that a full soup can hit the railing along the stairs with significant force.

{¶43} Next, Bowers testified that Miller grabbed her arm and "helped [her] fall down the [stairs]." Trial Tr., p. 12. Though Bowers initially indicated that Miller helped her fall down the stairs, she later testified that she could not remember whether Miller pushed her down the stairs, conceding that it was

possible that she fell down the stairs due to her inebriation. Bowers, however, consistently maintained that Miller grabbed her arm while they were atop the stairs, but conceded that it was possible that Miller grabbed her arm in an attempt to prevent her fall.

**{¶44}** Miller testified that he did not push Bowers down the stairs. Instead, Miller indicated that Bowers fell down the stairs due to her inebriated condition. Further, Miller acknowledged that he grabbed Bowers' arm, but maintained that he did so to keep her from falling down the stairs.

**{¶45}** In addition to Bowers' and Miller's testimony concerning the incident on the stairs, Officer Frankart offered testimony that corroborated the allegation that Miller grabbed Bowers' arms. Specifically, Officer Frankart testified that the he observed fresh bruising to Bowers' arms. Also, photographs depicting bruising to Bowers' arms were admitted into evidence. This testimony and photographic evidence, however, offers little credence to either Bowers' or Miller's version of events. Such evidence simply supports the allegation that Miller grabbed Bowers, but does not divulge why Miller grabbed her.

**{¶46}** Finally, Bowers testified that Miller repeatedly struck her with a door as she attempted to flee his residence. Though Bowers acknowledged that the incident at the door likely occurred because she mistakenly took Miller's keys, she maintained that she was repeatedly struck with the door during the incident.

Miller's recollection of the incident was similar to Bowers. Miller testified that he stopped Bowers at the door because she was attempting to leave with his keys. Once he retrieved his keys, Miller testified that he told Bowers to leave and attempted to shut the door. The door, however, would not shut because Bowers leg was caught between it and the door jamb. According to Miller, Bowers kept her leg in the door because she wanted to argue. Miller then acknowledged that he slammed the door on her leg "[a] little bit" in an attempt to get her out of his residence. Trial Tr., p. 86. In addition to Bowers' and Miller's testimony, Officer Frankart testified that he observed fresh bruising to one of Bowers' legs. Also, photographs depicting bruising to Bowers' leg were admitted into evidence.

{¶47} Upon considering the evidence presented at trial, there is undeniably a conflict between Bowers' and Miller's version of events. While Officer Frankart's testimony and the photographic evidence admitted at trial corroborate certain portions of each incident, such evidence does little to support one version of events over another. Consequently, this matter comes down to Bowers' and Miller's credibility.

{¶48} It is axiomatic that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. *State v. Thompson*, 3d Dist. No. 3-10-23, 2011-Ohio-3631, ¶ 13, citing *Seasons Coal Co. v. Cleveland*,

10 Ohio St.3d 77, 80 (1984). Accordingly, since the trial court was in the best position to resolve issues of credibility, and there is competent, credible evidence to support its finding that Miller knowingly caused and/or attempted to cause physical harm to Bowers, we cannot conclude that the trial court clearly lost its way in reaching its verdict. Consequently, we find that the verdict was not against the manifest weight of the evidence.

{¶49} Accordingly, we overrule Miller's second assignment of error.

*Assignment of Error No. IV*

{¶50} In his fourth assignment of error, Miller contends that the trial court erred when it considered the allegations contained in the complaint when determining his guilt. Because we find that the trial court did not rely on the allegations contained in the complaint in determining his guilt, we disagree.

{¶51} Miller's contention is grounded in the trial court's discussion of its findings. Specifically, Miller cites to the following portion of the trial court's findings:

> The Court: But, the important thing was the physical evidence that was investigated by, uhm, Officer Frankart. And we can play semantics with it, but basically it's supported, the physical evidence supported the allegations.
>
> Now, I understand, Mr. Miller, that some of, you know, some of the testimony was, well, she was falling. I was trying to help her. And, uhm, I look at that again as somewhat semantics.

> I think the physical evidence supported the original allegations. Accordingly, the Court finds that the State has proven guilt beyond a reasonable doubt, you are hereby found guilty. Trial Tr., p. 97.

In addition to these findings, the trial court also conducted a detailed review of Bower's testimony, noting, in relevant part, those portions of her testimony that it found to be consistent and inconsistent.

{¶52} Having considered the trial court's findings, we find nothing indicating that the trial court considered the allegations contained in the complaint instead of the evidence presented at trial when determining Miller's guilt. Instead, the trial court's findings indicate the exact opposite. The trial court's findings demonstrate that it engaged in a thorough consideration of the testimony, exhibits, and credibility of the witnesses. Further, the trial court's findings unequivocally demonstrate that it based its finding of guilt on the evidence presented at trial. As such, we find Miller's argument unavailing.

{¶53} Accordingly, we overrule Miller's fourth assignment of error.

{¶54} Having found no error prejudicial to Miller herein, in the particulars assigned and argued, we affirm the trial court's judgment.

***Judgment Affirmed***

**WILLAMOWSKI, J., concurs.**

**SHAW, J., concurs in Judgment Only.**

**/jlr**