[Cite as *State v. Radcliff*, 2014-Ohio-3981.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
SHELBY COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO. 17-14-01

      v.

APRIL M. RADCLIFF,                O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Sidney Municipal Court
Trial Court No. 13CRB00608

**Judgment Affirmed**

**Date of Decision: September 15, 2014**

APPEARANCES:

    *Scott A. Kelly* for Appellant

    *Jeffrey L. Amick* for Appellee

Case No. 17-14-01

**SHAW, J.**

{¶1} Defendant-appellant April Radcliff ("Radcliff") appeals the January 2, 2014 judgment of the Sidney Municipal Court sentencing Radcliff to 90 days in jail after Radcliff was convicted in a jury trial of Attempted Theft in violation of R.C. 2923.02 and R.C. 2913.02(A)(1).

{¶2} The facts relevant to this appeal are as follows. On June 18, 2013, a Complaint was filed in the Sidney Municipal Court of Shelby County, Ohio, alleging that Radcliff committed Theft in violation of R.C. 2913.02(A)(1), a first degree misdemeanor. According to the Complaint, Radcliff "did with purpose to deprive the owner of property * * * without the consent of the owner * * * knowingly [c]onceal 2 pairs of Panties in her purse valued under $1,000.00" at a Family Dollar store. (Doc. 1).

{¶3} On June 24, 2013 Radcliff was arraigned and pled not guilty to the charge.

{¶4} On November 1, 2013 a journal entry was filed reflecting that the Complaint had been amended from the charge of Theft to Attempted Theft in violation of R.C. 2923.02 and R.C. 2913.02(A)(1), a second degree misdemeanor.[1] (Doc. 17).

---

[1] The record indicates that the amendment was made as part of an agreement between the parties on August 13, 2013. (Doc. 7).

{¶5} On November 7, 2013, the case proceeded to a jury trial. At trial the State called Assistant Manager Angela Kahn, who testified that she witnessed Radcliff stuff underwear into her purse, and the State also called the investigating officer, Officer Bronson. Radcliff elected not to present any evidence. The jury ultimately found Radcliff guilty of Attempted Theft.

{¶6} Following the trial, on November 13, 2013, Radcliff filed a motion for acquittal, or in the alternative, a motion for a new trial. (Doc. 28). On November 25, 2013, the State filed a memorandum in opposition to Radcliff's motions. (Doc. 29). On November 26, 2013, the trial court filed a judgment entry indicating that it had reviewed all of the evidence and various cases and denied Radcliff's motions. (Doc. 30).

{¶7} On December 27, 2013, the matter came before the trial court for sentencing. Radcliff was ultimately sentenced to serve ninety days in jail and fined $150. (Doc. 40). A judgment entry reflecting this was filed January 2, 2013. (*Id.*)

{¶8} It is from this judgment that Radcliff appeals, asserting the following assignment of error for our review.

**ASSIGNMENT OF ERROR**
**THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY OF ATTEMPTED THEFT AS DEFINED BY OHIO REVISED CODE §2923.02 AND §2913.02 BECAUSE THE FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶9} In her assignment of error, Radcliff argues that her conviction for Attempted Theft was against the manifest weight of the evidence. Specifically Radcliff contends that the evidence did not establish that she took a "substantial step" toward the commission of the offense.

{¶10} An appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387. Because reversals based upon the manifest weight are for exceptional circumstances, as the Ohio Supreme Court held in *Thompkins,* Section 3(B)(3), Article IV of the Ohio Constitution mandates the unanimous concurrence of all three judges on the reviewing panel to reverse a defendant's conviction. *Thompkins* at 389.

{¶11} In this case Radcliff was charged with Attempted Theft. Revised Code 2913.02 contains the elements for Theft, and reads,

> **(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:**

**(1) Without the consent of the owner or person authorized to give consent;**

Revised Code 2923.02 contains the elements for Attempt, and reads,

**(B) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.**

{¶12} The Ohio Supreme Court has further defined a criminal attempt in *State v. Woods*, 48 Ohio St.2d 127 (1976), overruled in part by *State v. Downs*, 51 Ohio St.2d 47 (1977). In *Woods*, the Ohio Supreme Court held, "A 'criminal attempt' is when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." *Woods* at paragraph one of the syllabus; *see also State v. Kirkland*, Ohio Sup. Ct. No. 2010-0854, 2014-Ohio-1966, ¶135 (wherein the Ohio Supreme Court recently reaffirmed Woods' definitions of attempt).

{¶13} In defining a substantial step, the *Woods* Court indicated that the act need not be the last proximate act prior to the commission of the offense. *Woods* at 131-132. However, the act "must be strongly corroborative of the actor's criminal purpose." *Id.* at paragraph one of the syllabus. "The 'substantial step' standard 'properly direct[s] attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police

intervention * * * in order to prevent the crime when the criminal intent becomes apparent.' " *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 102 quoting *Woods* at 132. " 'Precisely what conduct will be held to be a substantial step must be determined by evaluating the facts and circumstances of each particular case.' " *State v. Miller*, 3d Dist. Seneca No. 13-12-52, 2013-Ohio-3194, ¶ 31, quoting *State v. Butler,* 5th Dist. Holmes No.2012–CA–7, 2012–Ohio–5030, ¶ 28.

**{¶14}** To prove that Radcliff committed Attempted Theft, the State first called Angela Kahn. Kahn was an Assistant Manager at Family Dollar, had worked there for seven years, and was working on the date of the incident. (Tr. at 59). Kahn testified that she had been trained to detect shoplifting and that the Family Dollar store "got a lot of theft." (Tr. at 79). Kahn testified that she witnessed Radcliff come into the store on June 17, 2013 at approximately 3:30 in the afternoon. (Tr. at 61). Kahn testified that at the time, she was running the cash register near the store's entrance. (Tr. at 63).

**{¶15}** Kahn testified that when Radcliff entered the store she turned to the right and was looking at the bras and underwear. (Tr. at 64). Kahn testified that this was close to the register where Kahn was standing, only about six or seven feet away. (*Id.*) Kahn testified that she then lost sight of Radcliff briefly and thought that Radcliff "took off" down the aisle into the store. (Tr. at 67). Kahn testified that she was still standing at the register a few minutes later when she saw

Radcliff again in the vicinity of the bras and underwear. (Tr. at 68). Kahn testified that her "intuition" made her go check on Radcliff because she "just felt something was wrong." (Tr. at 68).

{¶16} Kahn testified that when she walked over to Radcliff, Radcliff was "[o]n the ground. Hunkered on the ground." (Tr. at 69). Kahn demonstrated what she meant, by being "down low to the ground with one knee on the ground and one knee up." (Tr. at 69). Kahn testified that she was only inches behind Radcliff and that she witnessed Radcliff "shoving two packs of three dollar underwear in her purse, a black purse." (Tr. at 70).

{¶17} Kahn testified that the purse was in Radcliff's lap and the underwear was on plastic hangers that were still attached. (Tr. at 72). Kahn testified that there was nothing else in Radcliff's hands, that she had no basket or cart. (Tr. at 73-74). Kahn testified that the underwear was certainly capable of being carried in one hand. (Tr. at 90). Kahn testified that when she witnessed Radcliff doing this she tapped Radcliff's arm and told her that she needed to come with Kahn. (Tr. at 74). Kahn testified that Radcliff then took the underwear out of her purse and handed them to her. (Tr. at 75). Kahn testified that Radcliff looked surprised and shocked. (Tr. at 76). Kahn testified that she didn't let Radcliff leave the store with the underwear because the store "get[s] a lot of theft and [she] figured if [she]

didn't * * * approach her when [she] did, [Radcliff] would have gotten away * * * like so many [others] get away." (Tr. at 79).

{¶18} Kahn testified that she then had the other associate in the store call the police, and Kahn waited with Radcliffe until the police arrived. (Tr. at 80). Kahn testified that while waiting for the police, she asked Radcliff if Radcliff had been in trouble before and she said that she had priors and had been in trouble. (Tr. at 82).

{¶19} The State next called Officer Mark Bronson. Bronson testified that he was an officer for the city of Sidney and was dispatched with the information that Family Dollar had a shoplifter in custody. (Tr. at 96-97). Officer Bronson testified that he went immediately to the Family Dollar and spoke to Kahn who was standing next to the registers by the door with Radcliff. (Tr. at 98). Officer Bronson testified that he asked "what was going on" and Radcliff responded "I fucked up." (Tr. at 100). Officer Bronson testified that he understood that statement to mean "[t]hat somebody had got caught stealing." (Tr. at 101). Officer Bronson said he then placed Radcliff under arrest and charged her initially with Theft, though it was amended to Attempted Theft because Radcliff did not walk past the point of sale. (Tr. at 104-105).

{¶20} Following Officer Bronson's testimony, the State rested its case. Radcliff elected not to present any testimony and the case was thus submitted to the jury, which ultimately found Radcliff guilty of Attempted Theft.

{¶21} On appeal, Radcliff contends that she had not committed a "substantial step" toward the completion of Attempted Theft and therefore her conviction was against the manifest weight of the evidence. Radcliff argues that she had not removed the price tags off of the underwear and that she was not able to proceed toward the cashier or the front door past the point of sale before she was stopped, making it impossible for Radcliff to have tried to pay for the underwear.

{¶22} Despite Radcliff's arguments, there was testimony presented a jury could find constituted a "substantial step" toward the commission of Theft. First, Radcliff "hunkered" down when she took the underwear, getting down on one knee with her back to the register, obscuring Kahn's potential view from where Kahn was standing. Second, Radcliff stuffed the underwear into her purse even though she had nothing else in her hands and could have easily carried the underwear. Finally, that Radcliff had committed an overt act seemed to be corroborated by her statement to Officer Bronson that she "fucked up."

{¶23} Thus based on the testimony, we cannot find that there was a manifest miscarriage of justice or that Radcliff's conviction for Attempted Theft

was against the manifest weight of the evidence. Accordingly, Radcliff's assignment of error is overruled.

{¶24} For the foregoing reasons Radcliff's assignment of error is overruled and the judgment of the Sidney Municipal Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ROGERS, J., concur.**

**/jlr**