[Cite as *State v. Elahee*, 2017-Ohio-7085.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO



| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160640 |
| | | TRIAL NO. 16CRB-12621 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| ROBERT ELAHEE, | : | |
| Defendant-Appellant. | : | |



Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 4, 2017


*Paula B. Meuthing*, City Solicitor, *Natalia S. Harris*, City Prosecutor, and *Jennifer Bishop*, Assistant City Prosecutor, for Plaintiff-Appellee City of Cincinnati, State of Ohio,

*Michael Trapp*, for Defendant-Appellant Robert Elahee.

**ZAYAS, Judge.**

{¶1}    Robert Elahee was found guilty of attempted theft after a bench trial.  He appeals, claiming the conviction was not supported by sufficient evidence because the state failed to prove he had the purpose to commit theft and that he took a substantial step toward committing a theft offense.  We overrule the assignment of error and affirm the trial court's judgment.

## Factual and Procedural Background

{¶2}    Annette McFarland was downtown having a drink when she was approached by Elahee, who asked her if she had a state ID.  When she responded that she did, he asked her if she wanted to make some extra money.  McFarland was interested, so she got into a car driven by another man, whom Elahee had hired to drive them, and they drove to the Fifth Third Bank in Hyde Park.

{¶3}    As they were driving, Elahee directed her to open a checking account and obtain starter checks and a bank card so he could go to another bank and cash a check.  After successfully cashing the check, she and the driver would each be paid $100.

{¶4}    The plan was for her to deposit $45 of her own cash and five or six dollars from Elahee to open the account.  She entered the bank to open the account and spoke with the bank manager, Marybeth Calendine.  Calendine began asking McFarland questions to determine the best account for her.  McFarland became confused and could not answer the questions.  McFarland said that she needed to call her mother and would return shortly.

{¶5}    McFarland returned to the car and told Elahee the bank would not give her a bank card.  Instead, the bank would mail her a card.  Elahee then started calling her names and instructed her on the necessary steps to open a checking and savings account.  She returned to the bank five or ten minutes later.

2

{¶6}   This time, McFarland insisted on a checking and savings account. Calendine asked questions to ensure a checking and savings account would best suit her needs.  Based on McFarland's responses, Calendine recommended a product that was not a checking account.  Again McFarland left to call her mother.

{¶7}   She returned to the car, and Elahee continued to yell at her.  When she reentered the bank 15 minutes later, McFarland told Calendine about the plan because she was afraid of Elahee.  Calendine called the police.

{¶8}   Officer Victoria Wysel responded to Fifth Third Bank after hearing a radio run about possible fraud.  After interviewing Calendine and McFarland, Wysel spoke with Elahee, who claimed that McFarland was a friend of his and had asked him for a ride to the bank.  When Wysel found several starter checks from Wells Fargo in Elahee's pocket, he denied the checks were his.

{¶9}   Wysel brought the starter checks to Calendine, and she attempted to verify whether the starter checks were valid.  Calendine testified that starter checks are given to individuals when they initially open a checking account.  Customers can use the starter checks until their checks arrive in the mail.  When a bank is presented with a starter check, it raises a red flag.  Calendine further explained that Fifth Third Bank no longer issues starter checks.  The bank orders the checks, and the customer receives the checks ten days later in the mail.

{¶10}   Elahee did not introduce any evidence.

{¶11}   The trial court found him guilty.  The court sentenced Elahee to 90 days in jail, a $100 fine, and court costs.

{¶12}   In one assignment of error, Elahee claims the state failed to prove he had the purpose to commit theft and that he took a substantial step toward committing the theft offense.

## Law and Analysis

{¶13}   When reviewing a challenge to the sufficiency of the evidence, we must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶14}   Elahee was charged with attempted theft in violation of R.C. 2913.02(A)(1) and 2923.02(B).  R.C. 2913.02(A)(1) states:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent.

{¶15}   R.C. 2923.02(B), the attempt statute, states:

No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.

{¶16}   The Ohio Supreme Court has further defined a criminal attempt as "when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1976), paragraph one of the syllabus, *vacated on other grounds*, 438 U.S. 910, 98 S.Ct. 3133, 57 L.Ed.2d 153 (1978).  To constitute a substantial step, the offender's conduct need not be the last

4

proximate act prior to the commission of the offense, but it "must be strongly corroborative of the actor's criminal purpose." *Id.*

{¶17} The focus is on the defendant's overt acts that "convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention * * * in order to prevent the crime when the criminal intent becomes apparent." *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶ 102, quoting *Woods* at 132. " 'Precisely what conduct will be held to be a substantial step must be determined by evaluating the facts and circumstances of each particular case.' " *State v. Miller*, 3d Dist. Seneca No. 13-12-52, 2013-Ohio-3194, ¶ 31, quoting *State v. Butler*, 5th Dist. Holmes No. 2012-CA-7, 2012-Ohio-5030, ¶ 28.

{¶18} Elahee first claims that the state failed to prove that he had the purpose to commit a theft. We disagree. McFarland testified that Elahee approached her and offered her money to open a checking account. He instructed her to open the account with $50 and obtain starter checks for him to cash. After successfully cashing the checks, McFarland and the driver would each be paid $100. McFarland's testimony was sufficient to establish that Elahee had the purpose to commit theft. He intended to write checks for at least $200 to pay McFarland and the driver, knowing the account would not contain $200.

{¶19} Elahee also claims the state failed to prove that he took a substantial step toward committing the theft offense. The state offered sufficient evidence, if believed, to support that Elahee took a substantial step.

{¶20} Elahee solicited McFarland to open a bank account, hired a driver to take them from downtown to the bank, and repeatedly instructed McFarland about opening the account. And McFarland's testimony was corroborated by Calendine. The trier of fact could find that all of the overt actions Elahee took convincingly demonstrated a firm

purpose to commit a crime. Therefore, we cannot find that there was insufficient evidence to convict Elahee of attempted theft.

## Conclusion

{¶21} Because we find no merit to Elahee's sole assignment of error, we overrule it and affirm the trial court's judgment.

Judgment affirmed.

MOCK, P.J., and DETERS, J., concur.