[Cite as *State v. Williams*, 2024-Ohio-2307.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO. 13-23-32

    v.

JAMES D. WILLIAMS,

                                 O P I N I O N

    DEFENDANT-APPELLANT.

---

**Appeal from Seneca County Common Pleas Court
Criminal Division
Trial Court No. 23 CR 0003**

**Judgment Affirmed**

**Date of Decision:  June 17, 2024**

---

APPEARANCES:

    *Autumn D. Adams* **for Appellant**

    *Stephanie J. Kiser* **for Appellee**

**WALDICK, J.**

{¶1} Defendant-appellant, James D. Williams ("Williams"), appeals the judgment of conviction and sentence entered against him in the Seneca County Common Pleas Court, following a jury trial in which he was found guilty of four felony offenses. Williams argues that his four convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. For the reasons set forth below, we affirm.

*Procedural History and Facts of the Case*

{¶2} This case originated on January 26, 2023, when the Seneca County grand jury returned a four-count indictment against Williams, charging him as follows: Count 1 – Importuning, a fifth-degree felony in violation of R.C. 2907.07(D)(2); Count 2 – Attempted Unlawful Sexual Conduct with a Minor, a fourth-degree felony in violation of R.C. 2923.02(A) and R.C. 2907.04(A) and (B)(3); Count 3 – Disseminating Matter Harmful to Juveniles, a fifth-degree felony in violation of R.C. 2907.31(A)(1); and Count 4 – Possessing Criminal Tools, a fifth-degree felony in violation of R.C. 2923.24(A) and (C).

{¶3} On February 15, 2023, an arraignment was held and Williams pled not guilty to the indictment. Over six months of pretrial proceedings then ensued.

{¶4} On August 29, 2023, a jury trial was held, at which both the prosecution and the defense presented evidence.

**{¶5}** At trial, the sole prosecution witness was Officer Kyle Reinbolt of the Fostoria Police Department. Reinbolt testified that he became involved in the instant case on December 30, 2022, when working in an undercover capacity online, investigating sexual predators.

**{¶6}** Reinbolt testified that in such undercover operations he utilized a number of different apps and social media platforms on which he had set up profiles portraying himself as a young female. As persons messaged Reinbolt's online persona, he would converse with them via online messaging or texting, and then would focus his investigations on persons with whom the conversations turned sexual in nature. For his profile photos, Reinbolt used a picture of a female law enforcement colleague that had been altered with an app to make the colleague look like a juvenile. Reinbolt testified that he was never the person to initiate online contact and that he would not bring up sexual topics until mentioned by the other party. Once such communication was established, Reinbolt would then specifically tell the other person that he is 15 years old. Reinbolt also testified that, in his investigations, he does not suggest meeting up with the persons with whom he is communicating but, if that idea is suggested by the other person, he then attempts to make arrangements to meet in person. Reinbolt testified that his investigations are intended to focus on persons who actually do want to meet with the fictitious teenager, as there are instances where people want to communicate with a juvenile online but not meet in person. On the other hand, if a meeting is arranged and the

other person shows up, that demonstrates to Reinbolt that the person is likely someone who would commit a sex offense against a juvenile in person.

{¶7} Reinbolt testified that on December 30, 2022, his undercover teenaged account profile received a message from another account on an app he was using. The person who reached out to Reinbolt had a user name of "j.D. Dub". j.D. Dub's account profile listed him as a 39-year-old male from Fostoria. At that time, Reinbolt's profile was that of a female, and listed her age as 19 and location as Fostoria, with photos of a very young-looking female attached to the account.

{¶8} Reinbolt testified that the initial message from j.D. Dub on December 30, 2022 stated that he and a friend were looking for a sexy lady for a Christmas wish. In response, Reinbolt asked what the Christmas wish was. An ongoing conversation that was sexual in nature developed from there, and Reinbolt provided a phone number to j.D. Dub so that they could text. Reinbolt documented his digital communications with j.D. Dub by taking screen shots of all messages. At trial, Reinbolt identified State's Exhibit 1 as a printed compilation of all the messages exchanged between himself and j.D. Dub.

{¶9} Reinbolt testified that after j.D. Dub began texting, he sent Reinbolt a photograph. The picture depicted a nude male holding a small shampoo bottle in front of himself to cover his genital area. j.D. Dub identified the photo as being of him. At the time j.D. Dub sent that photo, Reinbolt had not yet claimed to be 15 years of age but, soon after, Reinbolt mentioned missing school that day, in response

to which j.D. Dub asked how old Reinbolt was, and Reinbolt said 15. j.D. Dub said that seemed like a trap and that it was illegal to do the kinds of things they had been talking about. j.D. Dub added that he was a high school coach and could get into big trouble as an adult male talking to a cute underage girl. j.D. Dub then requested that Reinbolt send a school I.D. and a video. Reinbolt made excuses as to why he could not do that, and then sent a selfie of a young girl's face to j.D. Dub.

{¶10} Over the course of the next few days, while j.D. Dub had initially expressed some concern relating to Reinbolt's stated age, the communications from j.D Dub quickly became very sexually graphic in nature. j.D. Dub asked Reinbolt about sexual experiences, offered to tutor the 15-year-old in sexual activity, described specific sexual acts that j.D. Dub liked to engage in, sent a photograph of j.D. Dub performing oral sex on a female, described the sexual acts that j.D. Dub and his girlfriend would perform with the 15-year-old, and then ultimately arranged an in-person meetup with the 15-year-old girl Reinbolt was pretending to be, for purposes of having sex with the 15-year-old.

{¶11} Reinbolt testified that j.D. Dub arranged to meet Reinbolt's online persona at 1:30 p.m. on January 4, 2023 at Foundation Park in Fostoria, for the stated purpose of j.D. Dub and his girlfriend engaging in sexual activity with the 15-year-old. j.D. Dub said that he would be driving a white Chrysler 300, which was very dirty.

{¶12} On January 4, 2023, at 1:30 p.m., Reinbolt and another officer waited in unmarked cars in locations near the park. The officers observed a dirty white Chrysler 300 pull into the park, where it then parked. The officers moved in and arrested the driver of the Chrysler 300, who was Williams. Williams' girlfriend was with him at that time. Reinbolt testified that the profile photos on j.D. Dub's account matched Williams, as did the age and height listed on the account. At the time of Williams' arrest, Reinbolt also confirmed that the number he had been texting belonged to Williams by sending a test text message to that number. Williams' cell phone was seized at the time of his arrest and, when Reinbolt sent the test text, Reinbolt's undercover phone number popped up on Williams' phone with the text Reinbolt had just sent.

{¶13} After the prosecution rested its case at trial, Williams then took the stand in his own defense. Williams testified that he was 39-years-old, from Fostoria, and that he had been using the app used by Reinbolt in order to find partners for the polyamorous lifestyle he practiced with his girlfriend. Williams admitted that he had been the one to reach out and send the initial message to Reinbolt's 19-year-old user profile. However, Williams testified that he immediately knew Reinbolt was lying about being 19, because Reinbolt wanted to text instead of using the app, and because Reinbolt then claimed to be 15 but did not talk like a 15-year-old.

{¶14} Williams testified that at no point during the communications with Reinbolt did he think Reinbolt was an actual teenager and that he knew it was a 30-year-old pretending to be a child. Williams also testified that the printouts of his communications with Reinbolt put into evidence by the state were incomplete. Williams testified that he continued the text conversation with Reinbolt because he felt a responsibility to protect children from the person who was pretending to be a child and he wanted to expose the person with whom he was communicating.

{¶15} Williams testified that he began making sexually explicit comments in the text communications in order to keep the other person interested. When asked about the photo he sent to Reinbolt that appeared to depict Williams performing oral sex on a female, Williams testified that the photo had been staged years before by Williams and a friend, and that it did not depict actual oral sex or even a real female but, rather, the body parts shown were part of a big Sumo body suit.

{¶16} Finally, Williams testified that he ultimately set up a meeting with the other person in order to expose that person, although Williams acknowledged that he had never alerted the authorities about his concerns and did not report the scheduled meeting to the police.

{¶17} At the end of the one-day trial, following arguments of counsel and instructions of law by the trial court, the jury returned guilty verdicts on all counts.

Case No. 13-23-32

{¶18} On October 18, 2023, a sentencing hearing was held. Williams was sentenced to 10 months in prison on Count 1, to 16 months in prison on Count 2, to 10 months in prison on Count 3, and to 10 months in prison on Count 4. The sentences on Counts 1, 2, and 3 were ordered to be served consecutively, with the sentence on Count 4 to be served concurrently, for a total stated prison term of 36 months.

{¶19} On November 15, 2023, Williams filed the instant appeal, in which he raises four assignments of error for our review.

### First Assignment of Error

**The jury's finding of guilty for Importuning was against the manifest weight and the sufficiency of the evidence because the State failed to prove beyond a reasonable doubt that Williams' conduct in texting Reinbolt would probably lead to any sexual activity.**

### Second Assignment of Error

**The jury's finding of guilty for Attempted Unlawful Sexual Conduct of [*sic*] a Minor was against the manifest weight and the sufficiency of evidence as Williams did not make a substantial step which would have resulted in having sexual conduct with a minor.**

### Third Assignment of Error

**The jury's finding of guilty for Disseminating Material [*sic*] Harmful to Juveniles was against the manifest weight and sufficiency of the evidence because the photo was not obscene.**

### Fourth Assignment of Error

**The jury's finding of guilty for Possessing Criminal Tools was against the manifest weight and sufficiency of the evidence.**

*Standards of Review*

{¶20} It is well established that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus.

{¶21} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33.

{¶22} By contrast, when reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In doing so, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the

factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* Nevertheless, when assessing a manifest-weight challenge, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*First Assignment of Error*

{¶23} In the first assignment of error, Williams asserts that his conviction for Importuning was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶24} Count 1 of the indictment charged Williams with Importuning in violation of R.C. 2907.07(D)(2), which at that time provided:

> (D) No person shall solicit another by means of a telecommunications device, as defined in section 2913.01 of the Revised Code, to engage in sexual activity with the offender when the offender is eighteen years of age or older and either of the following applies:
>
> * * *
>
> (2) The other person is a law enforcement officer posing as a person who is thirteen years of age or older but less than sixteen years of age, the offender believes that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender is four or more years older than the age the law

enforcement officer assumes in posing as the person who is thirteen years of age or older but less than sixteen years of age.

{¶25} In the instant case, Williams argues that his Importuning conviction was not supported by sufficient evidence and was against the manifest weight of the evidence because the evidence showed that Williams knew he was texting an adult, not someone who Williams believed to be a 15-year-old, and because Williams' purpose was to expose a predator and not to solicit the other person for sexual activity.

{¶26} As to the sufficiency of the evidence with respect to Count 1, Williams' argument here is based upon the testimony he gave at trial, and therefore relates largely to the weight of the evidence rather than sufficiency of the evidence. Nevertheless, upon examining the evidence presented at trial in the light most favorable to the state as we must in a sufficiency analysis, Officer Reinbolt's testimony and State's Exhibit 1, which was the compiled printout of all messages exchanged between Reinbolt and Williams, constituted evidence more than sufficient to convince the average mind beyond a reasonable doubt of Williams' guilt on Count 1. The messages sent by Williams, who was 39-years-old, quite clearly solicited the recipient for sexual activity, and most certainly established that Williams believed the recipient of the messages to be 15 years of age or that he was reckless in that regard.

{¶27} As to the manifest weight of the evidence with respect to Count 1, Williams suggests that the greater weight of evidence established that he lacked the

requisite intent and knowledge to be guilty of Importuning as charged. This argument is based on Williams' trial testimony that he knew he was communicating with an adult and therefore was not soliciting a 15-year-old for sexual activity. However, Williams' testimony was belied by the content of the numerous text messages he sent to Officer Reinbolt over the course of several days. More importantly, the jury was able to see, hear, and evaluate Williams' testimony and was free to believe or disbelieve any or all of that testimony. *See e.g. State v. Shockey*, 3d Dist. Marion No. 9-23-22, 2024-Ohio-296, ¶ 24, citing *State v. Jones*, 3d Dist. Allen No. 1-21-61, 2022-Ohio-2089, ¶ 28. This is not the exceptional case where the evidence weighs heavily against conviction.

{¶28} As Williams' conviction on Count 1 was supported by sufficient evidence and was not against the manifest weight of the evidence, the first assignment of error is overruled.

*Second Assignment of Error*

{¶29} In the second assignment of error, Williams asserts that his conviction for Attempted Unlawful Sexual Conduct with a Minor was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶30} Count 2 of the indictment charged Williams with Attempted Unlawful Sexual Conduct with a Minor in violation of R.C. 2923.02(A) and R.C. 2907.04(A) and (B)(3).

{¶31} R.C. 2907.04 defines the offense of Unlawful Sexual Conduct with a Minor, and provides in relevant part:

(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.

\* \* \*

(B) Whoever violates this section is guilty of unlawful sexual conduct with a minor.

\* \* \*

(3) Except as otherwise provided in division (B)(4) of this section, if the offender is ten or more years older than the other person, unlawful sexual conduct with a minor is a felony of the third degree.

{¶32} R.C. 2923.02 governs attempts to commit criminal offenses. R.C. 2923.02(A) provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(B) provides that "[i]t is no defense to a charge under [R.C. 2923.02(A)] that, in retrospect, commission of the offense that was the object of the attempt was either factually or legally impossible under the attendant circumstances, if that offense could have been committed had the attendant circumstances been as the actor believed them to be."

{¶33} In interpreting the language in R.C. 2923.02, the Supreme Court of Ohio has further defined a "criminal attempt" as "'an act or omission constituting a

substantial step in a course of conduct planned to culminate in [the actor's] commission of the crime.'" (Brackets *sic*.) *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, ¶ 175, quoting *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 101.

**{¶34}** As this Court explained in *State v. Potter*, 3d Dist. Hancock No. 5-19-14, 2020-Ohio-431, at ¶ 10:

> "To constitute a substantial step, the offender's conduct need not be the last proximate act prior to the commission of the offense * * *." *State v. Elahee*, 1st Dist. Hamilton No. C-160640, 2017-Ohio-7085, ¶ 16. Instead, a "substantial step" requires only "'conduct that is "strongly corroborative of the actor's criminal purpose."'" *Dean*[,] [*supra*,] at ¶ 175, quoting *Group*[,] [*supra*,] at ¶ 101, quoting [*State v.*] *Woods*[,] [48 Ohio St.3d 127, 357 N.E.2d 127 (1976)] at paragraph one of the syllabus. "'Precisely what conduct will be held to be a substantial step must be determined by evaluating the facts and circumstances of each particular case.'" *State v. Miller*, 3d Dist. Seneca No. 13-12-52, 2013-Ohio-3194, ¶ 31, quoting *State v. Butler*, 5th Dist. Holmes No. 2012-CA7, 2012-Ohio-5030, ¶ 28, citing *Group* at ¶ 100.

**{¶35}** In the instant case, Williams argues that that his conviction for Attempted Unlawful Sexual Conduct with a Minor was not supported by sufficient evidence and was against the manifest weight of the evidence because he had no plans to engage in sexual conduct with a minor and did not take a substantial step toward doing so.

**{¶36}** As with the first assignment of error, Williams' argument here is based upon the testimony he gave at trial and therefore relates largely to the weight of the evidence rather than sufficiency of the evidence. Nevertheless, upon examining the

evidence presented at trial in the light most favorable to the state, Officer Reinbolt's testimony coupled with State's Exhibit 1 was more than sufficient evidence to convince the average mind beyond a reasonable doubt of Williams' guilt on Count 2. As noted above, the messages sent by Williams, who was 39-years-old, clearly reflected Williams' intent to engage in sexual conduct with the recipient of those messages, whom Williams believed to be 15-years-old. In the texts he sent, Williams described at length, and in graphic detail, the sexual conduct that he envisioned participating in with the 15-year-old and his girlfriend, he explained how those sexual activities would be performed by the three of them, and Williams then sent multiple messages in order to arrange to meet the 15-year-old for purposes of that sexual encounter. After the meeting had been arranged, Williams and his girlfriend then arrived at the designated location at the appointed date and time.

{¶37} In *State v. Priest,* 2d Dist. Greene No. 2001 CA 108, 2002 WL 628639 (Apr. 19, 2002), the Second District Court of Appeals held that although no real minor was involved, the defendant "drove to [a] specified location on the date and time planned and that attempt to meet the imaginary [minor] was clearly a substantial step in the course of conduct planned to culminate in his commission of the crime [of Attempted Unlawful Sexual Conduct with a Minor]. It is obvious that his trip * * * was strongly corroborative of his criminal purpose." *Id*. at *4. See, also, *State v. Gann,* 154 Ohio App.3d 170, 2003-Ohio-4000; *State v. Lobo* 12th Dist. Butler No. CA2004-03-063, 2004-Ohio-5821.

**{¶38}** In light of the foregoing, we find that there was sufficient evidence presented at trial to establish that Williams took a substantial step towards engaging in Unlawful Sexual Conduct with a Minor that was strongly corroborative of his expressed purpose to commit the offense. Consequently, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of Attempted Unlawful Sexual Conduct with a Minor proven beyond a reasonable doubt.

**{¶39}** As to the manifest weight of the evidence with respect to Count 2, Williams suggests that the greater weight of evidence established that he lacked the requisite intent to be guilty of Attempted Unlawful Sexual Conduct with a Minor as charged. This argument is based on Williams' claim at trial that he knew he was communicating with an adult and therefore was not really intending to engage in sexual conduct with a 15-year-old. However, Williams' trial testimony was completely contradicted by the detailed content of the numerous messages he sent to Officer Reinbolt during the course of their multi-day text conversation. "A verdict is not against the manifest weight of the evidence because the [jury] chose to believe the State's witnesses rather than the defendant's version of the events." *State v. Hooper*, 3d Dist. Allen No. 1-21-35, 2022-Ohio-2990, ¶ 29, quoting *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Again, this is not the exceptional case where the evidence weighs heavily against conviction.

{¶40} As Williams' conviction on Count 2 was supported by sufficient evidence and was not against the manifest weight of the evidence, the second assignment of error is overruled.

*Third Assignment of Error*

{¶41} In the third assignment of error, Williams asserts that his conviction for Disseminating Matter Harmful to Juveniles was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶42} In Count 3 of the indictment, Williams was charged with Disseminating Matter Harmful to Juveniles in violation of R.C. 2907.31(A)(1), which provides in relevant part:

(A) No person, with knowledge of its character or content, shall recklessly do any of the following:

(1) Directly sell, deliver, furnish, disseminate, provide, * * * or present to * * * a law enforcement officer posing as a juvenile * * * any material * * * that is obscene * * * [.]

{¶43} As used in R.C. 2907.31, "obscene" is defined in R.C. 2907.01(F) in relevant part as follows:

(F) When considered as a whole, and judged with reference to ordinary adults or, if it is designed for sexual deviates or other specially susceptible group, judged with reference to that group, any material or performance is "obscene" if any of the following apply:

* * *

(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way

that tends to represent human beings as mere objects of sexual appetite[.]

{¶44} At issue here is the photograph that Williams texted to Officer Reinbolt, allegedly depicting Williams performing oral sex on a female. Williams argues that his conviction for Disseminating Matter Harmful to Juveniles was not supported by sufficient evidence and was against the manifest weight of the evidence because the photograph is not obscene. Specifically, Williams asserts that the photograph shows a male with his face near what appears to be the left thigh of another person but that the genitalia of the person under the male cannot be seen in the photo.

{¶45} We disagree. The photograph, while slightly blurry, is a close-up shot that clearly enough depicts a male who appears to be Williams with his mouth on the external genitalia of a female. Further, when texting the photograph to Reinbolt, Williams described the photo as having been taken from "a video of me pleasing a lesbian in turning her bisexual * * * [w]ith my tongue." As the State of Ohio accurately points out in its brief, based on the content of the text messages accompanying the photograph, Williams clearly sent that photo to promote his sexual prowess in order to illicit excitement from the purported juvenile and to arouse lust.

{¶46} Accordingly, Williams' conviction for Disseminating Matter Harmful to Juveniles was supported by sufficient evidence and the jury's verdict of guilty on Count 3 was not against the manifest weight of the evidence.

-18-

{¶47} The third assignment of error is overruled.

*Fourth Assignment of Error*

{¶48} In the fourth assignment of error, Williams asserts that his conviction for Possessing Criminal Tools was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶49} Williams was charged in Count 4 of the indictment with Possessing Criminal Tools in violation of R.C. 2923.24(A) and (C), which provides in relevant part:

> (A) No person shall possess or have under the person's control any *
> * * device, instrument, or article, with purpose to use it criminally.
>
> * * *
>
> (C) Whoever violates this section is guilty of possessing criminal tools. * * * If the circumstances indicate that the * * * device, instrument, or article involved in the offense was intended for use in the commission of a felony, possessing criminal tools is a felony of the fifth degree.

{¶50} In the instant case, the charge of Possessing Criminal Tools in Count 4 related to Williams' use of his cell phone to commit the crime of Importuning with which he was charged in Count 1. Williams does not dispute the evidence establishing that he used his cell phone to communicate with Officer Reinbolt. Rather, Williams argues that his conviction for Possessing Criminal Tools was not supported by sufficient evidence and was against the manifest weight of the evidence because he did not commit the Importuning offense as argued in Count 1, to wit: Williams claimed at trial that he knew he was texting an adult, not a 15-year-

old, and his purpose was to expose a predator and not to solicit the other person for sexual activity.

**{¶51}** The criminal tools statute criminalizes the possession of "any substance, device, instrument, or article, with purpose to use it criminally." R.C. 2923.24(A). In order to present adequate evidence to support a conviction under the criminal tools statute, the state must show possession and "show that [the offender's] purpose was to violate the law." *State v. Chappell*, 127 Ohio St.3d 376, 2010-Ohio-5991, 939 N.E.2d 1234, ¶ 22.

**{¶52}** This Court has already determined that there was sufficient evidence to establish the crime of Importuning as charged in Count 1, and that the guilty verdict on Count 1 was not against the manifest weight of the evidence. Accordingly, the evidence was also sufficient to prove Williams used the cell phone criminally in committing Importuning, and the guilty verdict on Count 4 was not against the manifest weight of the evidence.

**{¶53}** The fourth assignment of error is overruled.

*Conclusion*

**{¶54}** Having found no error in the particulars assigned and argued by the defendant-appellant, James D. Williams, the judgment of the Seneca County Court of Common Pleas is affirmed.

*Judgment affirmed.*

**WILLAMOWSKI, P.J. and ZIMMERMAN, J. concur.**