[Cite as *In re K.S.*, 2025-Ohio-4715.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

IN RE:

    K.S.,

ADJUDICATED DELINQUENT
CHILD.

CASE NO. 11-25-06

OPINION AND
JUDGMENT ENTRY

Appeal from Paulding County Common Pleas Court
Juvenile Division
Trial Court No. 20242041

**Judgment Affirmed**

**Date of Decision: October 14, 2025**

APPEARANCES:

    *Melody Wilhelm* **for Appellant**

    *Joseph R. Burkard* **for Appellee**

**WALDICK, P.J.**

{¶1} Juvenile-appellant, K.S., brings this appeal from the March 19, 2025 judgment of the Paulding County Common Pleas Court, Juvenile Division. On appeal, K.S. argues that there was insufficient evidence presented to establish that he committed Vandalism. Further, he argues that his delinquency adjudications for committing Vandalism and Breaking and Entering were against the manifest weight of the evidence. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} On February 19, 2025, an amended complaint was filed alleging that K.S. was a delinquent child pursuant to R.C. 2152.021 due to committing Breaking and Entering in violation of R.C. 2911.13(B) and Vandalism in violation of R.C. 2909.05(B)(2), both felonies if committed by an adult. It was alleged that K.S. and another juvenile, K.B., spray-painted numerous signs and buildings at the Paulding County fairgrounds resulting in over $6,000 in damages. In addition, it was alleged that K.S. and K.B. broke a lock on a building at the fairgrounds, trespassed inside, and spray-painted the floor of the building and a large cooler. K.S. denied the allegations.

{¶3} K.S. and K.B. proceeded to a joint adjudicatory hearing. After the evidence was presented, the trial judge determined beyond a reasonable doubt that K.S. and K.B. committed the acts as alleged and that they were delinquent children.

{¶4} On March 19, 2025, a final judgment entry was filed memorializing K.S.'s disposition. It is from this judgment that K.S. appeals, asserting the following assignments of error for our review.[1]

### First Assignment of Error

**The trial court improperly found appellant delinquent of vandalism of governmental property under ORC 2909.05(B)(2) when the property that was harmed was not governmental property.**

### Second Assignment of Error

**The trial court abused its discretion in finding appellant delinquent of vandalism and breaking and entering, when such a finding was against the manifest weight of the evidence.**

*First Assignment of Error*

{¶5} In his first assignment of error, K.S. argues that there was insufficient evidence presented to establish that he committed Vandalism of "governmental property."

---

[1] K.B.'s case is not before us and we will address her only inasmuch as it relates to K.S.'s case.

## Standard of Review

**{¶6}** The standard for reviewing a challenge to the sufficiency of the evidence in a juvenile adjudication is the same standard we apply in adult criminal cases. *In re J.D.*, 2023-Ohio-250, ¶ 57 (3d Dist.). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. " 'In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact.' " *State v. Williams*, 2024-Ohio-2307, ¶ 21 (3d Dist.), quoting *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.).

## Controlling Statute

**{¶7}** In his first assignment of error K.S. challenges his delinquency adjudication by contending that the evidence did not sufficiently establish that he committed Vandalism in violation of R.C. 2909.05(B)(2) beyond a reasonable doubt. The statutory subsection at issue reads as follows:

No person shall knowingly cause serious physical harm to property that is owned, leased, or controlled by a governmental entity. A governmental entity includes, but is not limited to, the state or a political subdivision of the state, a school district, the board of trustees of a public library or public university, or any other body corporate and politic responsible for governmental activities only in geographical areas smaller than that of the state.

R.C. 2909.05(B)(2).

Evidence Presented

{¶8} In 2024, Dan H. was the president of the Paulding County Agricultural Society. The Agricultural Society "is a group of individuals that are on what is commonly known as the Fair Board." (Tr. at 37). The Agricultural Society maintained the fairgrounds for the Paulding County Commissioners. (*Id*.)

{¶9} According to Dan, the Paulding County fairgrounds is owned by the Paulding County Commissioners and the "Ag Society." "The Ag Society owns from the grandstand driveway over to the east, and then the County Commissioners own to the west." (*Id*.) Dan H. testified that there is a written lease between the Commissioners and the Agricultural Society that leases all of the fairgrounds property to the Agricultural Society.

{¶10} On October 17, 2024, Dan learned that numerous buildings and signs on the fairgrounds had been vandalized with spray paint. In addition, one building with a kitchen had the lock broken. Inside the building the floor had been spray-painted along with a large cooler.

{¶11} There was also spray paint on the sign of the Grover Hill Lion's building and on a county road sign. The Fair Board meeting building, to the west of the property, "had been painted on with obscenities and . . . the windows had been painted over. Both doors on the front of the building had been painted with words." (Tr. at 40). Further, the "old Armory building" was spray-painted.

{¶12} Photographs of the spray-painted areas were presented at the adjudication hearing. Some of the words painted included racial and homophobic slurs. Numerous paintings of male genitalia were included on doors, floors, and sides of buildings. Altogether, Dan testified that repair estimates were in excess of $6,000.

{¶13} After learning of the issues at the fairgrounds, Dan called the police and an investigation ensued. The Paulding Chief of Police investigated the scene and she thought that the paintings that included the letters "C + C" were suspicious, making her think of two juvenile individuals she had dealings with previously who lived relatively close to the fairgrounds. Further, she thought that the written "g's" were distinct in the racial slurs painted on the buildings.

{¶14} The Chief of Police contacted the Paulding County Opportunities Center, which was the school attended by the two individuals she suspected of being "C + C" and she received a handwriting sample from K.B. wherein the g's were written in the same distinct manner as they were spray-painted on the buildings. K.B. was K.S.'s girlfriend.

{¶15} The Chief of Police conducted interviews with K.S. and K.B. Although both children initially denied being involved, they both eventually admitted that they went together to the fairgrounds and K.S. admitted he had spray paint. However, during the interview, K.S. recanted his confession and stated that he was never at the scene of the incident.

Analysis

{¶16} K.S. argues on appeal that the State presented insufficient evidence to establish that he vandalized "governmental property." More specifically, he contends that although testimony was presented that property at the Paulding County fairgrounds was vandalized, the evidence did not definitively establish what property was owned by the government and what property was owned by the "Ag Society." K.S. argues that there was no evidence presented to indicate how the "Ag Society" is funded, what its purpose is, and whether it constitutes a government entity or some division of the Paulding County local government.

{¶17} What K.S. ignores in his argument is the fact that, at the very least, testimony indicated that the Paulding County Commissioners owned half of the fairgrounds, particularly the western area. There was testimony regarding buildings and signs that were vandalized "west" of the grandstands, which per the descriptions provided by Dan, would include property owned by the Paulding County Commissioners.

{¶18} Thus even if we assumed, without finding, that the "Ag society" was not a governmental entity for purposes of R.C. 2909.05(B)(2), when looking at the evidence in the light most favorable to the State as we are directed in a sufficiency review, the evidence supports a finding that governmental property was vandalized.

{¶19} Moreover, the legal support K.S. cites to support his proposition that the evidence was insufficient here actually directly undermines his own argument. K.S. cites *Green Cty. Agricultural Soc. V. Liming*, 2000-Ohio-486, a civil case from the Supreme Court of Ohio wherein the Court considered whether the "Green County Agricultural Society" was entitled to sovereign immunity under R.C. Chapter 2744. Ultimately the Court held "that a county agricultural society is a political subdivision pursuant to R.C. 2744.01(F)." *Id*. Thus K.S.'s case authority does not support his argument because it would actually support a finding that the "Ag Society" was a governmental entity.

{¶20} In sum, after reviewing the record and all the evidence presented, we do not find that there was insufficient evidence presented to determine that K.S. committed vandalism of government property. Therefore, his first assignment of error is overruled.

*Second Assignment of Error*

**{¶21}** In his second assignment of error, K.S. argues that his delinquency adjudications for committing Vandalism and Breaking and Entering were against the manifest weight of the evidence.

Standard of Review

**{¶22}** Our review of whether a juvenile adjudication is against the manifest weight of the evidence is considered under the same standard as adult criminal cases. *J.D.*, *supra*, at ¶ 59. When reviewing whether a factfinder's decision was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In doing so, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

Evidence Presented by the Defense

**{¶23}** K.S.'s father testified in his defense at the adjudication hearing. He testified that on the night of the alleged incident he was at home and so was K.S. He testified that there was only one way in and out of the house—the front door—and if K.S. used it, the six dogs would usually make noise. He testified that the windows in K.S.'s room were "boarded up" to prevent bugs from entering. K.S.'s father testified that he was not awakened on the night of the alleged incident.[2]

Analysis

**{¶24}** K.S. argues that the evidence could only establish that he was *at* the fairgrounds, not that he actually did any of the painting or that he broke into one of the buildings.

**{¶25}** Contrary to his argument, both children admitted at one point in their interviews that they were present at the fairgrounds and that spray paint was also present. Both children were consistent in their interviews that the incident occurred late at night—after their parents would have been in bed.

**{¶26}** Moreover, some of the painted vandalism on the buildings included the letters "C + C," which the Paulding Chief of Police testified connected to the juveniles in question. Further, the handwriting on the "distinct" g's matched K.B.'s,

---

[2] K.B.'s mother also testified at the hearing and she stated that K.B. was at home during the incident.

and K.B. was K.S.'s girlfriend. K.S. also had a specific connection to the fairgrounds beyond living nearby because he worked at the "FFA stand" previously.

{¶27} Finally, one of the buildings had the lock broken on it, and inside the building the floor and a cooler had been spray-painted, causing significant damage.[3] Testimony indicated that K.S. and K.B. did not have permission to be on the premises. This evidence supports the Breaking and Entering adjudication.[4]

{¶28} Given the significant amount of circumstantial evidence, and the statements of the children in their interviews, we do not find that this is one of the "exceptional" cases where the evidence weighs heavily against the adjudications. Therefore, K.S.'s second assignment of error is overruled.

*Conclusion*

{¶29} Having found no error prejudicial to K.S. in the particulars assigned and argued, his assignments of error are overruled and the judgment of the Paulding County Common Pleas Court, Juvenile Division, is affirmed.

***Judgment Affirmed***

**MILLER and WILLAMOWSKI, J.J., concur.**

---

[3] Dan testified that despite significant clean-up efforts, many items had to be replaced altogether.
[4] For reference, the "Breaking and Entering" statute, R.C. 2911.13(B), reads as follows: "No person shall trespass on the land or premises of another, with purpose to commit a felony."

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

Juergen A. Waldick, Judge

Mark C. Miller, Judge

John R. Willamowski, Judge

DATED:
/jlm